THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SPRINT COMMUNICATIONS, INC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| | ) | **Jury Trial Demanded** |
| ADIK KUMMETOV, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOES 1 THROUGH 20, | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF**

This action for damages and injunctive relief is brought by Sprint Communications, Inc. ("Sprint" or "Plaintiff"), against Defendants Adik Kummetov ("Kummetov") and John Does 1-20 (collectively "Defendants") who participate in, and facilitate others who are engaged in, the unauthorized "unlocking" of Sprint wireless phones. Sprint alleges as follows:

**NATURE OF ACTION**

1.      Sprint leases wireless phones to its customers for use on Sprint's wireless network at prices significantly below the price Sprint pays for the phones to make them more widely accessible to consumers. Sprint recoups the money it loses on the phones through the lease payments and profits earned on the sale of its wireless services.

2.      Sprint buys these wireless phones from manufacturers that install proprietary locking software into the phones. Among other things, this locking software prevents the phones from being used on any wireless network other than the Sprint network until the phones are unlocked in accordance with Sprint's unlocking policy.

61140892.3

3.      Defendants fraudulently access Sprint's computer systems and the phone manufacturers' copyrights in order to "unlock" these wireless phones that are used on Sprint's wireless network.

4.      The "locking" software is essential to Sprint's business because it allows Sprint to subsidize the cost of the phone to consumers while protecting Sprint's investment in the phones.

5.      "Unlocking" a phone disables certain software pre-installed by phone manufacturers, which is restricts the use of phones to the Sprint wireless network. Once a phone is unlocked, it can be used on other carrier systems.

6.      For these Sprint phones, customers enter into Terms and Conditions with Sprint that state when the phones can be unlocked.

7.      Kummetov sells cell phone "unlocking" services through websites that unlock Sprint phones (as well as phones for other carriers). One website claims that it is "[t]he #1 Cell Phone Unlocking Company" and that it is "[c]ompletely safe, with no risk to your phone or hardware. No software downloads are required. Alongside unlocks, your money are [sic] completely secure as well."

8.      Kummetov has these phones unlocked through Sprint employees and vendor call center employees he solicits to unlock the Sprint phones in return for financial compensation.

9.      John Doe's 1-20 are Sprint employees or employees of vendor call centers that unlock phones for Kummetov.

10.     These rogue Sprint or call center employees – John Does 1-20 – unlock phones for Kummetov, in breach of their duty of good faith and fair dealing and contractual duties with Sprint or with the agreements Sprint has with the call centers.

2

61140892.3

11.     Once these Sprint phones are unlocked, many of the phones are then resold overseas where wireless phones are not subsidized and can be sold at a premium or used on another carriers' network without being subjected to a contract.

12.     Defendants' misconduct has caused Sprint substantial losses and has caused immediate and immeasurable injury to its business prospects, reputation, goodwill, and effectively stole Sprint's subsidy investment in its phones.

## THE PARTIES

13.     Plaintiff Sprint Communications, Inc. is a wholly owned subsidiary of Sprint Corporation, and is a Kansas corporation, with its principal place of business in Overland Park, Kansas.

14.     Defendant Kummetov is an individual residing in Tashkent, Uzbekistan and personally engaged in the improper conduct described herein.

15.     Upon information and belief, John Doe Defendants 1 through 20 jointly participated in the unlocking of Sprint phones, including accessing Sprint's computer networks to unlock these Sprint phones without Sprint's authorization or consent.

16.     Sprint is informed and alleges that each fictitiously named John Doe Defendant is responsible in some manner for the occurrences herein alleged and that Sprint's injuries were proximately caused by such Defendants.

## JURISDICTION AND VENUE

17.     This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 because of Sprint's claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. and the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq*. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

61140892.3

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

19.     This Court has personal jurisdiction over the Defendants either by residence or because Defendants have conducted, engaged in, and carried out torts or other wrongful conduct within or directed to this District and has caused damage to Sprint within this district.

## SPRINT'S BUSINESS MODEL

20.     Sprint and its affiliates offer a comprehensive range of telecommunications services to consumers, businesses, and government users. Sprint currently serves tens of millions of customers nationwide.

21.     Sprint's telecommunications services enable Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on Sprint's wireless network.

22.     In addition to being available online, over the phone with authorized Sprint customer service representatives, and in its stores, Sprint phones and wireless service are also sold through authorized Sprint dealers and retailers around the country, with whom Sprint has contractual relationships.

23.     Sprint's business model is based upon Sprint's ability to deliver affordable and up to date products to its customers. Sprint provides phones to its customers through either low cost lease arrangements where the customer makes monthly payments over a period of time, or the customer purchases phones for the manufacturer's suggested retail price ("MSRP").

24.     As part of that lease arrangement, the customer also agrees to purchase Sprint cellular and data service and maintain it for the life of the contract. Sprint generates revenue from the monthly payments for the cellular and data service.

61140892.3

25.    If a phone is purchased from Sprint for the MSRP, the phone requires no contract

and can be unlocked in accordance with Sprint's unlocking policy.

26.    Sprint invests heavily in efforts to provide its customers with the most up-to-date

phones, and shoulders most or all of the cost of purchasing a new phone for its customers by

allowing customers to make low monthly lease payments. This allows Sprint to make phones

available to new customers at a low cost when they initiate wireless service, and also provide

new subsidized phones to existing customers at regular intervals to ensure customers' phones

keep up with the Sprint's technology, maintaining the efficiency of its wireless network.

27.    For customers who lease their phones, once that Sprint customer pays the

outstanding lease payments for the requisite contract period along with the balance between the

MSRP and what they have previously paid, the Sprint customer then owns the phone and the

phone may be eligible to be unlocked if in accordance with Sprint's unlocking policy.

**TERMS AND CONDITIONS REGARDING THE USE OF SPRINT PHONES**

28.    Sprint phones are sold subject to terms and conditions ("Terms and Conditions")

which conspicuously state:

> If you get a Device from Sprint or a Sprint authorized retailer without paying full
> price (MSRP) for the Device, you agree not to resell or trade in, or participate or
> profit in the resale or trade in, of the Device to a third party until you have met all
> your financial and contractual obligations to us.  If you do this without meeting
> your obligations, we reserve the right to take any action we deem necessary,
> including charging you for the difference between the Device's full price and the
> price you paid for it, and seeking recovery of related damages. [1]

29.    Further, Sprint's Terms and Conditions contain an unlocking policy which sets

forth the criteria when Sprint will unlock a device.[2]

---

[1]   *See*  https://www.sprint.com/en/legal/terms-and-conditions.html  (last  reviewed  on
December 14, 2017 and the Terms and Conditions were last revised on 11/1/2016).

[2]   *See* https://www.sprint.com/en/legal/unlocking-your-sprint-device.html (last reviewed
on December 14, 2017).

61140892.3

## DEFENDANTS' MISCONDUCT

30.      Sprint has discovered that a significant number of the Sprint phones sold or leased are not being activated for use on the Sprint wireless network as required by the Terms and Conditions.

31.      Recently, Sprint became aware of Defendant Kummutov's websites that provide services to unlock Sprint phones (along with phones from the other major United States' carriers). The landing page is shown below:



32.      One of Kummetov's websites claims to be the #1 cell phone unlocking company and provides an email address of k77adik@gmail.com and a telephone number of +998909555051.

33.      In or about October 2017, Sprint identified Kummetov as having the email address of k77adik@gmail.com which was used as the contact email for the websites.

34.      Sprint then identified Facebook postings associated with Kummetov, where he purportedly sought Sprint employees to unlock Sprint phones for compensation.

35.      Sprint also identified postings on a Twitter account associated with Adik Kummetov, advertising unlocking services and his websites.

36.      Kummetov has also attempted or actually made contact with Sprint employees to get assistance unlocking phones.

61140892.3

37.    On or about October 19, 2017, undercover investigators for Sprint contacted Kummetov and he stated he needed to unlock phones for a variety of carriers, including Sprint. Kummetov stated he would pay $10 via PayPal for every International Mobile Equipment Identity number ("IMEI") that could be unlocked.

38.    Kummetov told the investigators he bought iPhones from various sources and sent them a lengthy list of Sprint IMEI's that he requested be unlocked.

39.    Sprint's investigators told Kummetov that they would unlock five of the iPhones as a test. The investigators then unlocked the iPhones for purposes of the investigation.

40.    Kummetov then paid $50 dollars via PayPal to the investigators for unlocking the five iPhones.

41.    Kummetov then sent the investigators additional IMEI's to unlock and stated he needed someone within Sprint to unlock phones. He also claimed he has been offering unlocking services for ten years.

42.    Recently, Sprint has discovered that unknown customer care support employees or employees of its vendor call centers have been unlocking phones for Kummetov (as well as others) and receive payment for doing so.

43.    These John Does 1-20 Defendants have had access to Sprint's computer systems in order to assist Sprint customers with service and billing issues. They also had the ability to unlock phones.

44.    Upon information and belief, Kummetov has reached out to and successfully had John Does 1-20 unlock Sprint phones for him in return for financial compensation.

45.    While the complete extent of Kummetov's participation in the unlock scheme is not yet known, Kummetov is actively involved in several integral parts of the conspiracy, including compensating John Does 1-20 for their illegal and unauthorized actions.

61140892.3

46.     Accordingly, the Defendants here have engaged in such scheme to Sprint's detriment.

<strong>COUNT I</strong><br>
<strong><u>TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS</u></strong><br>
<strong><u>EXPECTANCY AGAINST ALL DEFENDANTS</u></strong>

47.     Sprint incorporates by reference its previous allegations as if set forth fully herein.

48.     Sprint sells it phones online, over the phone through authorized Sprint customer service representatives, in its stores, and through authorized Sprint dealers and retailers around the country, with whom Sprint has contractual relationships. These phones are sold to customers, who have contractual relationship with Sprint through Sprint's Terms and Conditions which they were required to enter into when leasing a phone.

49.     These Sprint phones are sold or leased to customers at a subsidized price with the intent that the customer use Sprint's wireless network and Sprint can recover the subsidized price through the revenue generated by the services.

50.     When Sprint offers its subsidized phones for sale, it has expectancy that the purchasers of the phones will use the phones on the Sprint or Sprint wireless network for the length of the contract.

51.     John Does 1-20 know of this expectancy and were aware of the Terms and Conditions that Sprint has with its customers as well as the requirements for unlocking phones on Sprint's wireless network. Upon information and belief, Kummetov was also aware of Sprint's customer contracts due to the nature of his business.

52.     By either unlocking Sprint phones or through compensating employees to unlock phones of customers who may have otherwise been ineligible for their phones to be unlocked, Defendants intentionally interfered with Sprint's customer contracts through improper means and

for an improper purpose, thereby causing a breach of those contracts and a loss of Sprint's expectancy in future revenue from those customers as well as Sprint's loss of the subsidy.

53. Defendants' actions were intentional and its conduct proximately caused Sprint damages in an amount to be determined at trial.

## COUNT II
## BREACH OF THE DUTY OF LOYALTY AGAINST JOHN DOES 1-20

54. Sprint incorporates by reference its previous allegations as if set forth fully herein.

55. Upon information and belief, John Does 1-20 were employees of Sprint.

56. As employees of Sprint, John Does 1-20 had a duty of loyalty to Sprint.

57. By improperly using Sprint's property and confidential information for their own benefit and for the benefit of Kummetov and others, John Does 1-20 acted against the best interests of their employer, Sprint.

58. By failing to disclose the unlock scheme to Sprint, John Does 1-20 acted against the best interests of their employer, Sprint.

59. Through their conduct, John Does 1-20 breached their duty of loyalty to Sprint.

60. John Does 1-20 breached their duty of loyalty to Sprint and proximately caused Sprint damages in an amount to be determined at trial.

## COUNT III
## FRAUD AGAINST JOHN DOES 1-20

61. Sprint incorporates by reference its previous allegations as if set forth fully herein.

62. Upon information and belief, John Does 1-20 were employees of Sprint or employees of Sprint vendors.

63. For each phone unlocked by Kummetov, the John Doe defendant represented to Sprint that the IMEI was eligible to be unlocked in accordance with Sprint's unlocking policy.

9

61140892.3

64.     At the time the John Doe defendant made the representation, the John Doe defendant knew that such representation was false and that the phone was not eligible to be unlocked.

65.     The representation was made with the intention for Sprint to rely on it and unlock the phone from Sprint's network.

66.     Sprint reasonably relied upon the representation and actually allowed the phone to be unlocked.

67.     Because of the false representation made by each John Doe defendant, Sprint has been damaged in that the phone has been unlocked and not activated on the Sprint network thereby depriving Sprint the subsidy investment in the phone as well as the related service contract revenue for each phone.

**COUNT IV**
**COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**
**[AGAINST JOHN DOES 1-20]**

68.     Sprint incorporates by reference its previous allegations as if set forth fully herein.

69.     All computers used by John Does 1-20 without authorization or in excess of their authorized access, or to access or traffic Sprint's information, including, but not limited to, all servers, desktop computers, and laptop computers, were at all relevant times used in interstate commerce and are protected computers under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e).

A.     **Violation of Section 1030(a)(4) of the CFAA**

70.     John Does 1-20 knowingly, and with the intent to defraud, accessed Sprint's protected computers without authorization or exceeded their authorized access and unlocked Sprint phones on Sprint's wireless network without Sprint's knowledge or consent.

71.     John Does 1-20's conduct, which was intended to and actually did defraud Sprint, exceeded their authorized access to Sprint's protected computer systems, as defined by Section 1030(e)(6) of the CFAA.

72.     As a result of their participation in the unlocking scheme, John Does 1-20 unlocked phones that were meant to be used exclusively on Sprint's wireless network, and received cash consideration for doing so, all of which are things of value.

73.     Accordingly, the conduct of John Does 1-20 constitutes unauthorized access of Sprint's protected computer systems in violation of Section 1030(a)(4) of the CFAA.

### B.     Violation of Section 1030(a)(5)(C) of the CFAA

74.     John Does 1-20 intentionally accessed Sprint's protected computers without authorization or exceeded their authorized access and as a result of such conduct, unlocked Sprint phones on Sprint's wireless network without Sprint's knowledge or consent.

75.     John Does 1-20 access to Sprint's protected computers caused Sprint to suffer damages and loss because they unlocked phones that were to be used on Sprint's wireless network and Sprint could not recoup the subsidy for its phones.

76.     Accordingly, John Does 1-20 conduct constitutes intentional access to a protected computer without authorization in violation of Section 1030(a)(5)(C) of the CFAA.

### C.     Facts Common to All CFAA Violations

77.     John Does 1-20 knowingly and intentionally conspired to commit the offenses detailed above.

78.     John Does 1-20 activities substantially affect interstate commerce as Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

61140892.3

79.     John Does 1-20 unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), including but not limited to the following:

       i.      The cost Sprint paid for the phone but did not recoup from Defendants;

      ii.      The lost revenue to be generated from the service plan associated with the Sprint phone.

     iii.      Investigation fees and costs associated with Defendants' activity.

     iv.      Implementing changes and corrective measures to customer accounts and implementing additional resources for customer service to affected accounts.

80.     John Does 1-20's actions have caused Sprint damages well in excess of $5,000.

81.     Pursuant to 18 U.S.C. § 1030(g), Sprint is therefore entitled to recover compensatory damages, injunctive and other equitable relief.

82.     John Does 1-20's conduct is intentional, fraudulent, malicious and willful.

### COUNT V
### DIGITAL MILLENNIUM COPYRIGHT ACT OF 1988 AGAINST JOHN DOES 1-20

83.     Sprint incorporates by reference its previous allegations as if set forth fully herein.

84.     The Sprint phones contain technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with Sprint's authority, to gain access to the proprietary software, as set forth in 17 U.S.C. § 1201.

85.     The Sprint phones contain technological measures that effectively control access to the proprietary software.

86.     Sprint did not give John Does 1-20 the authority to unlock or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the Sprint phone.

61140892.3

87.     Sprint did not grant John Does 1-20 the authority to circumvent the technological measures for effectively controlling access to the Sprint phone.

88.     John Does 1-20 acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair a technological measure for effectively controlling access to the proprietary software without Sprint's authority.

89.     John Does 1-20 engaged in this misconduct for the purpose of profiting from the altered Sprint phones, and not for the sole purpose of lawfully connecting to a wireless telephone communication network.

90.     John Does 1-20 acted to, and/or knowingly engaged in a conspiracy designed to circumvent a technological measure that effectively controls access to the Sprint phones that is protected under title 17 of the United States Code, and thereby violated 17 U.S.C. § 1201.

91.     John Does 1-20's conduct has caused and, unless restrained, will continue to cause Sprint severe, immediate, and irreparable injury and damages for which Sprint has no adequate remedy at law. Sprint is entitled to injunctive relief restraining such conduct, an award of damages, including punitive damages, as well as other equitable and legal relief.

## COUNT VI
## CIVIL CONSPIRACY

92.     Sprint incorporates by reference its previous allegations as if set forth fully herein.

93.     An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators to unlawfully unlock Sprint Phones, which results in tortious interference with business expectancies, breach of contract, violations of the Computer Fraud and Abuse Act, and violation of the Digital Millennium Copyright Act of 1988.

94.     Defendants knowingly agreed to engage, and did engage in one or more overt acts in pursuit of the conspiracy as stated above.

13

61140892.3

95.     Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

96.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

<u>**DESIGNATION OF PLACE OF TRIAL**</u>

Sprint hereby designates Kansas City, Kansas as the place of trial in this case.

**WHEREFORE**, Sprint requests that the Court, after a trial by jury of its claims, enter judgment against Defendants as follows:

(a)     awarding Sprint its compensatory, consequential, statutory and special damages, as well as exemplary damages, together with pre and post-judgment interest, as provided by law;

(b)     granting permanent injunctive relief in favor of Sprint and against Defendants enjoining Defendants from engaging in the unlawful practices described in this Complaint; and

(c)     granting such further relief as this Court deems just and proper.

Respectfully submitted,

**POLSINELLI PC**

*/s/ Michael S. Foster*
_____

| | |
|---|---|
| Russell S. Jones, Jr. | (#26636) |
| Jay E. Heidrick | (#20770) |
| Michael S. Foster | (#24011) |

**POLSINELLI PC**
900 W. 48th Place
Suite 900
Kansas City, Missouri  64112
(816) 753-1000
(816) 753-1536 (FAX)
rjones@polsinelli.com
jheidrick@polsinelli.com
mfoster@polsinelli.com

*Attorneys for Plaintiff Sprint Communications, Inc.*

14

61140892.3